616 P.2d 1116

**HOBBS GAS COMPANY, Plaintiff-Appellee and Cross-Appellant,**

v.

**NEW MEXICO PUBLIC SERVICE COMMISSION, Defendant-Appellant and Cross-Appellee,**

Rev. F. W. Wells and Jeff Bingaman, Attorney General, Intervenors-Appellants and Cross-Appellees.

No. 12147.

Supreme Court of New Mexico.

Jan. 17, 1980.

As Amended March 6, 1980.

Jeff Bingaman, Atty. Gen., Leonard A. Helman, David S. Cohen, Agency Asst. Atty. Gen., Public Service Commission, Santa Fe, for New Mexico Public Service Commission.

Jeff Bingaman, Atty. Gen., Jeff L. Fornaciari, Asst. Atty. Gen., Santa Fe, for intervenor-appellant Atty. Gen.

J. Lee Cathey, Carlsbad, for intervenor-appellant Wells.

Maddox, Maddox & Cox, J. M. Maddox, Hobbs, Modrall, Sperling, Roehl, Harris & Sisk, George T. Harris, Jr., Albuquerque, J. W. Neal, Hobbs, for plaintiff-appellee.

## OPINION

PAYNE, Justice.

Hobbs Gas Company (Hobbs) filed with the New Mexico Public Service Commission (Commission) Advice Notice Nos. 18 and 19 and Tariff Sheets by which it requested the Commission to approve a rate increase. After hearings, the Commission issued its final order denying any rate increase. Hobbs appealed to the district court which held that the Commission's order was arbitrary, capricious, unreasonable, unlawful and not supported by substantial evidence. The district court declared the order invalid and remanded the cause. The Commission now appeals from this order.

The district court made the following findings of fact upon which it based its decision:

6. The finding in Finding of Fact No. 13 of the Commission's Order that the common equity portion of Petitioner's capital structure as of December 31, 1976 was $896,479 is arbitrary, capricious, unreasonable, unlawful and is not supported by substantial evidence in the record in that Respondent acted unreasonably in deducting the Company's acquisition adjustment ($505,583) from the Company's equity capital at the end of the test year ($1,402,062).

7. The finding in Finding of Fact No. 13 of the Commission's Order that "previous Commissions have not addressed themselves squarely to the contested issue of whether the acquisition and adjustment should be included within the equity portion of the Company's capital structure" is not supported by the record of Case No. 1359 where it is shown that in Case No. 1046 Respondent specifically rejected this concept; such prior action by Respondent invoking the principles of res judicata and equitable estoppel as to this issue.

8. The finding in Finding of Fact No. 13 of the Commission's Order that "sound regulatory principle requires that it (acquisition adjustment) be deducted from both rate base and the Company's equity capital" is arbitrary, capricious, unreasonable, unlawful; is not supported by substantial evidence in the record and is in direct conflict with Respondent's previous decisions.

9. The deduction of acquisition adjustment from the common equity of Petitioner is arbitrary, capricious, unreasonable, unlawful and is not supported by substantial evidence in the record.

10. Respondent arbitrarily, capriciously and unreasonably prevented Petition-

er's expert witness from testifying as a rebuttal witness at the hearing held January 3, 1978, thereby depriving Petitioner of its right to present all relevant and material evidence to Respondent on the issues in the case and such refusal was therefore unlawful and the tendered testimony of such witness should be considered a proper part of the case record.

11. The Commission should acknowledge the full amount of the Company's book equity capital and allow a just and reasonable return thereon.

12. The Order of the Respondent dated February 27, 1978 should be annulled and vacated and this case should be remanded to the Respondent for the sole purpose of determining the revenues sufficient to achieve the purposes set forth in the New Mexico Public Utility Act (§ 62–3–1B NMSA) acknowledging the full amount of the Company's book equity capital and allowing a just and reasonable return thereon.

Three issues are raised on appeal: (1) did the trial court err in vacating and annulling the order of the Commission, which directed that Hobbs' acquisition adjustment should not be included within its capital structure for the purpose of rate base and revenue requirements, (2) did the trial court err in applying the doctrines of res judicata and equitable estoppel to the proceedings, and (3) did the trial court err in not allowing Hobbs the right to present a rebuttal witness on the issue of acquisition adjustment. We agree with the district court and affirm.

■ A general preliminary statement of legislative policy and public utility regulatory principles may be helpful in understanding the issues presented in this case. The Legislature delegated to the Public Service Commission the power and authority to regulate utilities. § 62–6–4, N.M.S.A. 1978. The Public Utility Act, which establishes both the Commission and all the apparatus for regulating utilities, provides in Section 62–3–1, N.M.S.A.1978:

B. It is the declared policy of the state that the public interest, the interest of consumers and interest of investors require the regulation and supervision of such public utilities to the end that reasonable and proper services shall be available at fair, just and reasonable rates, and to the end that capital and investment may be encouraged and attracted so as to provide for the construction . . . of proper plants and facilities for the rendition of service to the general public and to industry.

The law also charges the Commission with the responsibility of insuring that every rate made or received by a public utility shall be just and reasonable. § 62–8–1, N.M.S.A.1978. Whether or not a rate is just and reasonable is to be determined from the facts in each case based upon statutory guidelines. § 62–8–1; § 62–8–7, N.M.S.A.1978. The Commission is vested with considerable discretion in determining whether a rate to be received and charged is just and reasonable. *State v. Mountain States Tel. & Tel. Co.*, 54 N.M. 315, 224 P.2d 155 (1950); *Cities Service Gas Co. v. Federal Power Com'n*, 155 F.2d 694 (10th Cir. 1946), *cert. denied*, 329 U.S. 773, 67 S.Ct. 191, 91 L.Ed. 664 (1946).

■ The traditional elements of the rate-making process and the establishment of the total revenue requirement are (1) determination of the costs of the operation, (2) determination of the rate base which is the value of the property minus accrued depreciation, and (3) determination of the rate of return. C. Phillips, *The Economics of Regulation* 178 (1972). This rate-making process involves decisions as to whether certain utility investments or expenditures should be included or excluded under the above elements.

■ The rate base of a utility is the measure of the current value of property or investments owned by the utility in rendering service to the public. Several factors are considered in determining whether a particular piece of property should or should not be included in the rate base. Once a determination is made to include the utility plant in the rate base, then the value of the plant must be ascertained in order to

compute the revenue requirements. In New Mexico, the Legislature provided the manner and elements of value under Section 62-6-14, N.M.S.A.1978, which reads in pertinent part:

> When in the exercise of its powers and jurisdiction, it shall be necessary *for the commission* to consider or ascertain the valuation of the properties or business of a public utility, *it shall*, in arriving at such valuation, *give due consideration* to the history and development of the property and business of the particular public utility, *to the original cost thereof and to the cost of reproduction as a going concern and to other elements of value recognized by the laws of the land for rate-making purposes.* (Emphasis added.)

Reconstruction cost, replacement cost, original cost, capital cost, fair value and prudent investment have been and are factors utilized by regulatory commissions and courts in determining plant valuation. *State Corporation Com'n v. Mountain States Tel. & Tel. Co.*, 58 N.M. 260, 270. P.2d 685 (1954). Neither New Mexico case law nor the Public Utility Act imposes any one particular method of valuation upon the Commission in ascertaining the rate base of a utility. *Mountain States Tel. v. New Mexico State Corp.*, 90 N.M. 325, 563 P.2d 588 (1977). Nor does the spirit of the statute tie the Commission down to the consideration of a single factor in establishing rates. *See Southern Union Gas Co. v. New Mexico Pub. Serv. Com'n*, 84 N.M. 330, 503 P.2d 310 (1972).

In *Mountain States Tel. v. New Mexico State Corp., supra,* 90 N.M. at 338, 563 P.2d at 601, this Court reaffirmed this interpretation:

> The Commission was not bound to the use of any single formula or combination of formulae in determining rates. The rate-making function involves the making of pragmatic adjustments. It is the result reached, not the method employed, which is controlling. (Citations omitted.)

■ In reviewing the present case, the record discloses that the gas utility company was purchased by its current owners from the University of Virginia for approximately 2.7 million dollars. In a previous hearing before the Commission, Cause No. 1046, the record shows that the original cost less depreciation for the plant in service at the time of the purchase was 1.9 million dollars, with an acquisition adjustment of $522,976. The Commission carried these figures forward from that hearing to the present hearing and denied most of the acquisition adjustment as a revenue requirement for Hobbs. Of particular importance in the present case is plant acquisition adjustment. This is an accounting principle peculiar to regulated industries. It means, in ordinary terms, the amount paid for a plant in excess of original cost less accrued depreciation.

■ The accounting procedures governing gas utilities are contained in the National Association of Regulatory Commission's Uniform System of Accounts, which system has been adopted by the Commission. The uniform system of accounts provides specific accounts for the recording of plant acquisition adjustment on the utility's balance sheet. If the plant acquisition adjustment is included as a legitimate plant cost, it becomes a part of the rate base upon which a rate of return is to be computed. Inclusion of the plant acquisition adjustment increases the utility's revenue requirement which is borne by the rate payer in the form of increased utility rates. If the plant acquisition adjustment is excluded from the rate base, the cost of the adjustment is not borne by the rate payer.

There is no dispute as to the percentage of return that would be fair for a small utility the size of Hobbs. Hobbs asked for a 15 percent return on its actual equity and the Commission found that "a 15% return on common equity is just and reasonable and should allow the Company to obtain long-term financing."

In deducting $505,583 of the acquisition adjustment from Hobbs' actual equity capital invested in its properties, which is admitted to be $1,402,062 as of the end of the test year, the Commission has reduced Hobbs' equity capital by 36 percent. Most

of this capital was invested as a condition precedent to obtaining rate relief from the Commission in Hobbs' last rate case before the Commission. This deduction, combined with other deductions, resulted in a return on actual equity capital of only 7.5 percent rather than the 15 percent which the Commission admits to be a "just and reasonable" return on equity. There is no evidence which supports a determination by the Commission that a 7.5 percent return on equity is a "just and reasonable" return on Hobbs' fair value rate base. Too low a return does not permit adequate "interest coverage" which is essential to allow a utility to attract capital.

The Commission suggests that the plant acquisition adjustment should be excluded under the policy that there have been historical abuses associated with the sale and purchase of utility plants, and that under some types of transfers and manipulations, sales prices have been "beefed up." The Commission recognizes, however, that not all acquisition adjustments can be attributed to the above practices. The Commission further contends that a utility seeking inclusion of the adjustment must prove that the purchase was an arm's length transaction and resulted in some benefit to the rate payer. These contentions are not applicable in the present case for several reasons: (1) the denial of the acquisition adjustment has been applied almost exclusively in "original cost" jurisdictions, and (2) the record is very clear in this case that the purchase was indeed an arm's length transaction and did inure to the benefit of rate payers since the purchase price was a million dollars less than the appraised value. It further appears from the record that other utilities had been interested in purchasing the same property at the same time thus providing a source of true market value at the time of the purchase.

The action taken by the Commission in this case in deducting approximately $505,583 as plant acquisition adjustment from Hobbs' actual equity capital is unprecedented and contrary to previous policy of the Commission and previous orders of the Commission. The Commission's staff witness concedes that this is a recommended change in *policy* but the record does not reflect substantial evidence to sustain the Commission's refusal to include the above amount as a plant acquisition adjustment.

New Mexico is not an "original cost" jurisdiction. It is a "fair value" jurisdiction. A. Priest, Principles of Public Utility Regulation 162 (1969); § 62–6–14. To bolster its decision to deduct the plant acquisition adjustment from equity capital, the Commission would have this Court transform New Mexico from a fair value jurisdiction into an original cost jurisdiction. This is contrary to the plain language of Section 62–6–14. *See also State Corporation Com'n v. Mountain States Tel. & Tel. Co., supra; Southern Union Gas Co. v. New Mexico Pub. Serv. Com'n, supra.* We do not interpret the above cases as repudiating the fair value concept. On the contrary, they reaffirm what is clearly stated by the Legislature in the Public Utility Act.

■ In prior hearings before the Public Service Commission relating to the purchase of the utility plant, acquisition adjustment was never considered a factor in determining a fair value rate base, the amortization of the acquisition adjustment was not included as an operating revenue deduction in determining net operating revenue for rate-making purposes, and Hobbs never attempted to include the acquisition adjustment in the original cost component of its fair value rate base and to recover its amortization as a revenue deduction. If Hobbs had attempted this latter action, then acquisition adjustment would be a proper issue in the case. In the present case, the purchase price paid in 1972 was the fair value of the property at the time of sale. The value that existed at that time, and represented by the purchase price, continues to be reflected as part of the new component reproduction cost of Hobbs' fair value rate base. Therefore, acquisition adjustment is not a true issue.

■ The application by the trial court of the principles of res judicata and equitable estoppel in reviewing the Public Service

Commission determination was not error in this case. This holding does not restrict the ability of the Commission to adapt to changes in circumstances in the rate-making determination from one year to the next. In so holding we do not overrule or modify *Southern Union Gas Co. v. New Mexico Pub. Serv. Com'n, supra.* Conversely, we do not take the position that the Commission may not be bound by prior decisions as they affect a particular factual situation. In the present case, the trial court found that the specific issue of acquisition adjustment had been dealt with by the Commission in a previous proceeding in a manner inconsistent with its theory in this case. Under the facts in this case that inconsistency was not allowed by the district court. We affirm the trial court on this issue.

 Hobbs properly requested the Commission to hear an expert witness on rebuttal. Expert rebuttal witnesses are proper and often necessary in complicated and technical hearings for adjustment of rates of public utilities for the purpose of explaining testimony of expert witnesses supplied by the Commission. The mere fact that the Commission was in a rush to end the hearings and enter its order was not sufficient grounds for refusal to hear the rebuttal witness.

The judgment and order of the trial court is affirmed.

IT IS SO ORDERED.

EASLEY and FELTER, JJ., concur.