## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMSC-034

Filing Date: July 27, 2011

Docket No. 32,475

ATTORNEY GENERAL OF THE STATE OF NEW MEXICO,

      Appellant,

v.

NEW MEXICO PUBLIC REGULATION COMMISSION,

      Appellee,

and

PUBLIC SERVICE COMPANY OF NEW MEXICO,
WESTERN RESOURCE ADVOCATES, and
COALITION FOR CLEAN AFFORDABLE ENERGY,

      Intervenors.

Consolidated with:

Docket No. 32,480

NEW MEXICO INDUSTRIAL ENERGY CONSUMERS,

      Appellant,

v.

NEW MEXICO PUBLIC REGULATION COMMISSION,

      Appellee,

and

PUBLIC SERVICE COMPANY OF NEW MEXICO,
WESTERN RESOURCE ADVOCATES, and

1

**COALITION FOR CLEAN AFFORDABLE ENERGY,**

**Intervenors.**

**APPEAL FROM THE NEW MEXICO PUBLIC REGULATION COMMISSION**

Gary K. King, Attorney General
Jeffery S. Taylor, Assistant Attorney General
Santa Fe, NM

for Appellant Attorney General of the State of New Mexico

Peter Jude Gould
Santa Fe, NM

for Appellant New Mexico Industrial Energy Consumers

Robert Y. Hirasuna, General Counsel
Margaret Kendall Caffey-Moquin, Associate General Counsel
Santa Fe, NM

for Appellee New Mexico Public Regulation Commission

Benjamin Phillips
Ruth Fuess Keegan

Albuquerque, NM

Cuddy & McCarthy, L.L.P.
Rebecca D. Dempsey
Santa Fe, NM

for Intervenor Public Service Company of New Mexico

**OPINION**

**SERNA, Justice.**

{1}    These consolidated appeals are challenges to the Public Regulation Commission's (PRC) effort to comply with the Efficient Use of Energy Act. NMSA 1978, Sections 62-17-1 to -11 (2005) (amended 2008) (EUEA). The EUEA was amended by the Legislature, requiring the PRC to identify and remove regulatory disincentives to a public utility's implementation of energy efficiency programs. To comply with this legislative mandate, the PRC issued a Final Order on April 8, 2010, amending its Energy Efficiency Rules contained

in 17.7.2 NMAC (03/01/2007). The Attorney General (AG) and the New Mexico Industrial Energy Consumers (NMIEC) appealed separately from the PRC's Final Order, challenging the Final Order on several grounds. We consolidated both appeals, and after reviewing the record below, address only one dispositive issue, annulling and vacating the PRC's Final Order.

## I.  BACKGROUND

**{2}**    In 2005, the Legislature enacted the EUEA, requiring the PRC to "direct public utilities to evaluate and implement cost-effective programs that reduce energy demand and consumption." Section 62-17-5(B). The Legislature in Section 62-17-5(F) instructed the PRC to "identify any disincentives or barriers that may exist for public utility expenditures on energy efficiency and load management and, if found, ensure that they are eliminated."

**{3}**    In response to this mandate, the PRC promulgated its Energy Efficiency Rules at 17.7.2 NMAC (03/01/2007). The Energy Efficiency Rules required, in relevant part, that utilities file proposals with the PRC to remove disincentives or barriers to energy efficiency programs that the utilities believe to exist. *See* 17.7.2.9(K) NMAC (03/01/2007). If a utility did not file such a proposal, that utility would be precluded from recovering the costs of eliminating the disincentives and barriers to its energy efficiency programs. 17.7.2.9(K)(4) NMAC (03/01/2007).

**{4}**    In 2008, the Legislature amended the EUEA to allow utilities both to earn a profit on energy efficiency development and receive an incentive for instituting energy efficiency programs. *See* § 62-17-5(F). In response to the 2008 amendments to the EUEA, the PRC issued an order to conduct a rulemaking proceeding to amend 17.7.2 NMAC through the use of workshops conducted by interested parties and presided over by an appointed hearing officer. Between May 2008 and January 2009, twenty-two workshops were held and attended by several interested parties.

**{5}**    The workshops produced a proposed rule known as "Alternative A" to amend 17.7.2 NMAC. Alternative A has three major components. One, it permits utilities to temporarily recover an adder of one cent for each kilo-watt hour saved and ten dollars for each kilo-watt reduced from the annual demand due to approved energy efficiency programs. This adder, called the "Interim Adder," would expire almost two years after the Final Order. Two, Alternative A requires utilities and interested parties to file proposals for a permanent solution to eliminate disincentives to energy efficiency programs. Three, Alternative A provides that, after the Interim Adder expires, the utilities will continue to receive an incentive of one-half a cent for every kilo-watt hour saved and ten dollars for each kilo-watt reduced from the annual demand due to approved energy efficiency programs, the "Reduced Adder," even after a permanent solution to removing disincentives is implemented.

**{6}**    The PRC requested public comment on Alternative A and scheduled an evidentiary hearing on the economic justification of Alternative A. The PRC stated that evidence and

3

comments collected during the workshops would not be part of the evidentiary record for the rulemaking process.

**{7}** At the evidentiary hearing, the three investor-owned utility companies in New Mexico, Public Service Company of New Mexico (PNM), Southwestern Public Service Company (SPS), and El Paso Electric Company (EPE), each presented projected revenue the utility anticipated losing due to its energy efficiency programs and the projected recovery the utility would experience if the PRC were to adopt Alternative A. SPS estimated that it would lose $2.52 million in revenue the first two years that Alternative A would be in effect, but recover $9.57 million from the Interim Adder. PNM estimated that it would lose $9.36 million in revenue the first two years that Alternative A would be in effect, but recover $12.15 million from the Interim Adder. EPE estimated that it would lose $2.53 million in revenue the first two years that Alternative A would be in effect, but recover $1.36 million from the Interim Adder. From these estimates, the PRC concluded that in the first two years, the Interim Adder contained in Alternative A would result in SPS receiving a profit of $7.05 million, PNM a profit of $2.79 million, and EPE not receiving a profit, but failing to recover $1.16 million of its lost revenue. Each utility testified that Alternative A was a reasonable compromise that removed the disincentives to implementing energy efficiency programs. Evidence was received from several other parties, both in support of and opposition to Alternative A.

**{8}** The PRC issued a Final Order amending 17.7.2 NMAC with Alternative A, with minor amendments not relevant to this appeal.[1] The AG and NMIEC requested a rehearing which the PRC denied. An appeal to this Court, pursuant to our appellant jurisdiction over appeals from final orders of the PRC contained in Article VI, Section 2 of the New Mexico Constitution and NMSA 1978, Section 62-11-1 (1993), followed.

## II. DISCUSSION

### A. Standard of Review

**{9}** "We review administrative orders to determine whether the Commission's decision is arbitrary and capricious, not supported by substantial evidence, outside the scope of the agency's authority, or otherwise inconsistent with law." *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n* (*NMIEC*), 2007-NMSC-053, ¶ 13, 142 N.M. 533, 168 P.3d 105 (brackets, internal quotation marks and citation omitted). The burden is on the parties challenging the agency order to make this showing. *Id.* This Court does not have the authority to modify orders of the PRC; we must "either affirm or annul and vacate" the order. NMSA 1978, § 62-11-5 (1982); *accord In re Petition of PNM Gas Servs.* (*In re PNM*), 2000-NMSC-012, ¶ 10, 129 N.M. 1, 1 P.3d 383. "In reviewing the PRC's decision,

---

[1]The PRC's Final Order also considered and rejected an Alternative B, which is not relevant to this appeal.

4

we begin by looking at two interconnected factors: whether the decision presents a question of law, a question of fact, or some combination of the two; and whether the matter is within the agency's specialized field of expertise." *Albuquerque Bernalillo Cnty. Water Util. Auth. v. N.M. Pub. Regulation Comm'n* (*ABCWUA*), 2010-NMSC-013, ¶ 17, 148 N.M. 21, 229 P.3d 494 (internal quotation marks and citation omitted).

**{10}**  "Statutory interpretation is an issue of law, which we review de novo." *NMIEC*, 2007-NMSC-053, ¶ 19. "When construing statutes, our guiding principle is to determine and give effect to legislative intent." *Id.* ¶ 20. We follow "classic canons of statutory construction," looking "first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id.* When construing statutes related to the same subject matter,

> the provisions of a statute must be read together with other statutes in pari materia under the presumption that the legislature acted with full knowledge of relevant statutory and common law. Thus, two statutes covering the same subject matter should be harmonized and construed together when possible, in a way that facilitates their operation and the achievement of their goals.

*State ex. rel. Quintana v. Schnedar*, 115 N.M. 573, 575-76, 855 P.2d 562, 564-65 (1993) (internal ellipses, alteration omitted); *accord Pub. Serv. Co. of N.M. v. N.M. Pub. Util. Comm'n*, 1999-NMSC-040, ¶ 23, 128 N.M. 309, 992 P.2d 860.

## B.  Just and Reasonable Rates

**{11}**  The New Mexico Public Utility Act (PUA) defines "rate" as

> every rate, tariff, charge or other compensation for utility service rendered or to be rendered by a utility and every rule, regulation, practice, act, requirement or privilege in any way relating to such rate, tariff, charge or other compensation and any schedule or tariff or part of a schedule or tariff thereof.

NMSA 1978, § 62-3-3(H) (2009). When a utility implements an energy efficiency program, the utility reduces the amount of energy consumed by its customers. This necessarily results in a reduction in the utility's revenue. Through the adders contained in Alternative A, utilities receive additional revenue as compensation for reducing the consumption of their energy. We, therefore, agree with the PRC's conclusion that the adders contained in Alternative A are rates.

**{12}**  The PRC determined that the EUEA does not require the adder rates contained in Alternative A to be cost-based. The PRC reasoned that by not specifying how to determine the amount of profit each utility would earn from its energy efficiency programs, the Legislature intended to leave the method of that determination to the PRC's discretion. On

5

appeal, the PRC also suggests that the EUEA's use of the word "profit" rather than "investment," when "profit" is not used in any other ratemaking statute, demonstrates the Legislature's intent to allow rates created under the EUEA to ignore the cost-based requirement of rates created under the PUA. The crux of the PRC's argument is that a rate created under the EUEA does not need to follow the ratemaking principles that must be followed when creating a rate under the PUA.

**{13}** When the PRC sets a rate, that rate must be "just and reasonable." NMSA 1978, § 62-8-1 (1941). The declared policy of the PUA is "that *the public interest, the interest of consumers and the interest of investors* require the regulation and supervision of public utilities to the end that reasonable and proper services shall be available at fair, just and reasonable rates." NMSA 1978, § 62-3-1(B) (2008) (emphasis added). Under the PUA, a rate is "just and reasonable" when it balances the investor's interest against the ratepayer's interest. *See In re PNM*, 2000-NMSC-012, ¶ 8. Only when a rate falls within a "zone of reasonableness . . . between utility confiscation and ratepayer extortion" can the rate be "just and reasonable." *Behles v. N.M. Pub. Serv. Comm'n (In re Application of Timberon Water Co.)*, 114 N.M. 154, 161, 836 P.2d 73, 80 (1992).

**{14}** We now look to the language of the EUEA to determine whether the Legislature intended a different method of determining whether a rate is "just and reasonable" when the rate is created under the EUEA. In both the legislative findings of the EUEA, Section 62-17-2(E), and the declared policy of the EUEA, Section 62-17-3, the Legislature states that disincentives to energy efficiency programs should be removed "in a manner that balances the public interest, consumers' interests and investors' interests." When listing the requirements of the PRC under the EUEA, the Legislature explicitly directs the PRC to identify and remove disincentives to energy efficiency programs "in a manner that balances the public interest, consumers' interests and investors' interests." Section 62-17-5(F).

**{15}** The balancing language used in the EUEA is almost identical to the balancing language used under the PUA. Both require the PRC to balance the public interest, consumers' interests, and investors' interests. We read the EUEA in harmony with the PUA to conclude that when the PRC sets a rate, the Legislature intended the balancing requirement of the EUEA to be the same as the balancing done under the PUA to determine just and reasonable rates. *Cf. NMIEC*, 2007-NMSC-053, ¶ 22 (reading NMSA 1978, Section 62-16-6(A) (2004) (amended 2007) of the New Mexico Renewable Energy Act in harmony with the PUA to conclude that the Legislature intended the same ratemaking process to apply to both acts).

## C.    Alternative A's Adder Rates

**{16}** Having determined that the balancing test to determine "just and reasonable" rates is the same for rates created under both the PUA and EUEA, we turn to whether the PRC followed the required balancing test in its Final Order. When determining the investor's interest, the PRC takes into account the utility's interest in recovering its prudently incurred

costs and earning a reasonable return on its capital investments. *In re PNM*, 2000-NMSC-012, ¶¶ 8, 25. This encourages and attracts capital and investments so as to provide economic service to the general public and to industry, and protects the utility from a violation of due process and taking of property without just compensation. *Id.* ¶ 8. The ratepayer's interest, on the other hand, is to be protected from excessive rates that unjustly burden ratepayers while receiving steady and quality service from the utility. *Id.*; *see also State v. Mountain States Tel. & Tel. Co.*, 54 N.M. 315, 338, 224 P.2d 155, 170 (1950) ("The [PRC] should not burden the public with unreasonable or extortionate rates, considering the circumstances of each case . . . ."). "There is a significant zone of reasonableness . . . between utility confiscation and ratepayer extortion." *Behles*, 114 N.M. at 161, 836 P.2d at 80.

**{17}** The PRC "is vested with considerable discretion in determining whether a rate to be received and charged" falls within the zone of reasonableness. *Hobbs Gas Co. v. N.M. Pub. Serv. Comm'n*, 94 N.M. 731, 733, 616 P.2d 1116, 1118 (1980). The factors the PRC uses to determine whether a proposed rate falls within the zone of reasonableness are "based on [the utility's] revenue requirements: the costs of supplying the fuel and profit for the utility in an amount sufficient to encourage investment." *El Paso Elec. Co. v. N.M. Pub. Regulation Comm'n*, 2010-NMSC-048, ¶ 13, 149 N.M. 174, 246 P.3d 443. "The traditional elements of the ratemaking process and the establishment of the total revenue requirement are (1) determination of the costs of the operation, (2) determination of the rate base which is the value of the property minus accrued depreciation, and (3) determination of the rate of return." *Hobbs Gas Co.*, 94 N.M. at 733, 616 P.2d at 1118.

**{18}** Here, the PRC concluded that rates created under the EUEA do not need to be cost-based. The PRC did not inquire into any of the utilities' revenue requirements, nor any of the traditional elements of the ratemaking process. At the evidentiary hearing, the utilities merely presented evidence on what the impact of Alternative A would be. Without inquiring into a utility's revenue requirements, we fail to see how the PRC could adequately balance the investors' interests against the ratepayers' interests when adopting Alternative A. The PRC's adoption of the adder rates was arbitrary and unlawful in that they were not evidence-based, cost-based, nor utility specific. We conclude, therefore, that the PRC's Final Order is inconsistent with the law because the PRC had no basis in the record for determining that the adder rates contained in Alternative A were "just and reasonable."

## III. CONCLUSION

**{19}** We therefore annul and vacate the PRC's Final Order due to the lack of a lawful basis in the record to support its decision. We remand this case to the PRC for further proceedings in accordance with this Opinion.

**{20}** **IT IS SO ORDERED.**

_____

PATRICIO M. SERNA, Justice

WE CONCUR:


CHARLES W. DANIELS, Chief Justice


PETRA JIMENEZ MAES, Justice


RICHARD C. BOSSON, Justice


EDWARD L. CHÁVEZ, Justice

**Topic Index for *AG v. PRC*, Docket Number 32,372; *NMIEC v. PRC*, Docket Number 32,480**

| | |
|---|---|
| **AL** | **ADMINISTRATIVE LAW AND PROCEDURE** |
| AL-JR | Judicial Review |
| AL-SR | Standard of Review |
| AL-LI | Legislative Intent |
| | |
| **PU** | **PUBLIC UTILITIES AND COMMUNICATIONS** |
| PU-EL | Electric |
| PU-RM | Rate Making |
| PU-RU | Rule Making |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |
| ST-SG | Statutes, General |
| ST-AP | Applicability |