**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2012-NMCA-037

Filing Date: February 23, 2012

Docket No. 30,315

Consolidated with

Docket No. 30,445

THE ESTATE OF PETER NAUERT,

> Petitioner-Appellant,

v.

MELISSA MORGAN-NAUERT,

> Respondent-Appellee.

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Barbara J. Vigil, District Judge

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Marjorie A. Rogers
Emil J. Kiehne
Albuquerque, NM

Walther Family Law
David L. Walther
Santa Fe, NM

for Appellant

Gerber & Bateman, P.A.
Paul D. Gerber
Julie S. Rivers
Santa Fe, NM

for Appellee

**OPINION**

**WECHSLER, Judge.**

**{1}**     This appeal raises the issue of whether the Probate Code's creditors' claims classification provision, NMSA 1978, § 45-3-805(A) (1995), applies to lump-sum spousal support and attorney fee awards to a surviving spouse in a divorce proceeding continued after the death of the other spouse under the domestic affairs anti-abatement statute, NMSA 1978, § 40-4-20(B) (1993).  The district court in the divorce action (the Divorce Court) ordered that the decedent's estate (the Estate) pay the spousal support and attorney fee awards immediately, as a priority, before the district court in the probate proceedings (the Probate Court) assumed jurisdiction over the assets to address the Estate's creditors' claims. The Estate argues that (1) the Divorce Court did not have jurisdiction to classify the spousal support and attorney fee awards as Class One claims under Section 45-3-805(A); (2) the Divorce Court improperly interpreted Section 40-4-20(B) as providing the Divorce Court with authority to order the immediate payment of the awards before the Probate Court assumed jurisdiction over the assets; (3) the Divorce Court's order violated the Federal Insolvency Act, 31 U.S.C. § 3713(a)(1)(B) (1982); and (4) the Divorce Court's order is barred by res judicata because of the Probate Court's earlier classification of the claims.  We also address Appellee's argument that she is entitled to attorney fees because the Estate pursued this litigation in bad faith.  We hold that the Divorce Court did not err by ordering the immediate payment of the spousal support and attorney fee awards under Section 40-4-20(B), the Divorce Court's action did not violate the Federal Insolvency Act, and the Estate failed to preserve the res judicata claim which, we nevertheless conclude, fails.  We also deny Appellee attorney fees.  Accordingly, we affirm.

**BACKGROUND**

**{2}**     Peter Nauert (Peter) began this case by filing a petition for dissolution of marriage (the divorce action) from Melissa Morgan-Nauert (Melissa) in the Divorce Court in March 2006. Peter died while the divorce action was pending, and the Divorce Court continued the proceeding pursuant to the domestic relations anti-abatement statute, Section 40-4-20(B), with Peter's Estate as a substitute party.  On September 4, 2007, Michael Owens Jr., as personal representative of the Estate (the personal representative), initiated an informal probate action in the Probate Court for the administration of the Estate.

**{3}**     On November 14, 2007, Melissa filed a motion for interim spousal support, attorney fees, and costs in the Divorce Court.  At a subsequent status conference held before the Divorce Court ruled on the motion, the Estate argued that any spousal support, attorney fees, or costs awarded would be Class Six claims in the probate proceedings under the Probate Code's creditors' claims classification provision, Section 45-3-805(A), and informed the Divorce Court that the Estate was not certain that there would be sufficient assets in the Estate to pay the Class One through Class Five claims.  The Divorce Court set a hearing, and the parties submitted briefs, concerning the amount of spousal support and attorney fees to which Melissa was entitled and the proper classification of the awards under the Probate Code.  At the hearing, the Divorce Court orally awarded Melissa monthly spousal support

beginning September 1, 2007 and attorney fees, and determined that the attorney fees were a Class One claim under the Probate Code.

{4}     Subsequently, on May 21, 2009, the Divorce Court entered an interlocutory order awarding Melissa monthly spousal support and attorney fees beginning September 1, 2007, ordering that both awards shall be treated as Class One claims under the Probate Code, and requiring the Estate to pay the awards immediately.  The Estate did not pay the awards immediately and instead filed a petition for extraordinary writ in the New Mexico Supreme Court, arguing that the Divorce Court's classification of the spousal support and attorney fee awards usurped the authority of the Probate Court provided by the Probate Code.  Our Supreme Court denied the writ without comment on the merits.

{5}     After denial of the petition for extraordinary writ, the Estate filed a petition in the Probate Court for guidance on the classification of the spousal support and attorney fee awards under the Probate Code.  The Estate also released funds to Melissa in order to avoid being held in contempt for refusing to pay the spousal support and attorney fee awards immediately as required by the May 21, 2009 order in the Divorce Court.  On August 13, 2009, the Probate Court acted on the Estate's petition and entered an order determining that the spousal support and attorney fee awards were not Class One claims but rather Class Six claims under the Probate Code.

{6}     Meanwhile, the Divorce Court held the property division hearing in the divorce action on November 30 through December 4, 2009.  Melissa continued to argue that the Estate was required to pay the spousal support and attorney fees immediately, and the Estate continued to argue that the awards were Class Six claims.  The Divorce Court entered its findings of fact and conclusions of law on February 1, 2010.  It required the Estate to pay immediately a lump-sum spousal support award based on a monthly amount for the period of August 19, 2007 through August 19, 2010 and all of Melissa's attorney fees in the divorce action.  The Divorce Court reasoned that Section 40-4-20(B) required it to determine all financial issues relating to the divorce action, including spousal support and attorney fees, before the "remaining assets can be treated as the probate estate" and that the Divorce Court must "order distribution and payments *as a priority*" before the remainder of the Estate's assets pass to the jurisdiction of the Probate Court.  Therefore, although the Divorce Court's findings of fact stated that the spousal support and attorney fee awards are Class One claims under the Probate Code, the Divorce Court held that the awards are not part of the probate estate and therefore out of the jurisdiction of the Probate Court by operation of Section 40-4-20(B).

{7}     The Divorce Court entered a final judgment on March 24, 2010. Melissa subsequently filed a motion detailing the amount of attorney fees in the divorce action.  The Divorce Court awarded Melissa attorney fees on May 10, 2010, and the Estate filed a timely appeal on May 12, 2010.

**ARGUMENTS AND STANDARD OF REVIEW**

3

**{8}** On appeal, the Estate argues that (1) the Divorce Court did not have jurisdiction to classify the spousal support and attorney fee awards as Class One claims under the Probate Code's creditors' claims classification provision, Section 45-3-805(A); (2) the Divorce Court improperly interpreted Section 40-4-20(B) as providing the Divorce Court with authority to order the immediate payment of the awards; (3) the Divorce Court's order violated the Federal Insolvency Act, 31 U.S.C. § 3713(a)(1)(B); and (4) the Divorce Court's order is barred by res judicata. The first three issues require statutory construction, an issue of law that we review de novo. *See N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105. The application of res judicata is also an issue of law that we review de novo. *Chaara v. Lander*, 2002-NMCA-053, ¶ 10, 132 N.M. 175, 45 P.3d 895.

## DIVORCE COURT'S CLASSIFICATION OF CLAIMS

**{9}** The Estate first argues that the Divorce Court did not have jurisdiction to classify the spousal support and attorney fee awards as Class One claims under the Probate Code's creditors' claims classification scheme, Section 45-3-805(A). The Estate argues that in enacting Section 45-3-805(A), the Legislature "committed" the jurisdiction to classify claims "solely to district courts sitting in probate."

**{10}** However, the record reveals that the Divorce Court did not order the immediate payment of the spousal support and attorney fee awards based on classifying the awards as Class One claims under the Probate Code. Initially, in awarding interim support and attorney fees on May 21, 2009, the Divorce Court did classify the awards as Class One claims and ordered the immediate payment of the awards. However, the Estate did not pay either award and instead filed a petition for an extraordinary writ in the New Mexico Supreme Court and, after the Supreme Court denied the writ, the Estate filed a petition in the Probate Court for guidance on the classification of the awards. Ultimately, in the Divorce Court's findings of fact and conclusions of law, the Divorce Court relied exclusively on Section 40-4-20(B) in concluding that it "must determine all financial issues and order . . . payment of [spousal] support and attorney[] fees so that the remaining assets can be treated as the probate estate and the Probate Court can then proceed." In its final judgment, the Divorce Court echoed this conclusion and ordered the immediate payment of the awards "before the assets are returned to the jurisdiction of the Probate Court." The Divorce Court essentially determined that the assets awarded as spousal support and attorney fees are not part of the probate estate by operation of Section 40-4-20(B). The Divorce Court's classification did not contribute to its conclusion requiring the Estate to pay the spousal support and attorney fee awards immediately, and the classification, if error, is not grounds for reversal. *See Downs v. Garay*, 106 N.M. 321, 323, 742 P.2d 533, 535 (Ct. App. 1987) ("[E]rroneous findings of fact not necessary to support the judgment of the court are not grounds for reversal.").

## SECTION 40-4-20(B)

4

**{11}** We therefore turn to the Estate's argument that the Divorce Court misinterpreted Section 40-4-20(B) as providing it with authority to order the immediate payment of the spousal support and attorney fee awards without forcing Melissa to comply with the Probate Code's creditors' claims classification provision, Section 45-3-805(A), as a priority before the Probate Court assumed jurisdiction over the Estate's assets. On the other hand, Melissa argues that the Divorce Court did not err because the spousal support and attorney fee awards "were outside the Estate" by operation of Section 40-4-20(B) and, therefore, not subject to Section 45-3-805(A). This issue requires statutory construction of Section 40-4-20(B), Section 45-3-805(A), and related provisions in both the domestic affairs statutes and Probate Code.

**{12}** When engaging in statutory construction, our guiding principle is to give effect to the intent of the Legislature. *Att'y Gen. v. N.M. Pub. Regulation Comm'n*, 2011-NMSC-034, ¶ 10, 150 N.M. 174, 258 P.3d 453. In determining legislative intent, we first look to the "plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id.* (internal quotation marks and citation omitted). Further,

> [w]hen construing statutes related to the same subject matter, the provisions of a statute must be read together with other statutes in pari materia under the presumption that the [L]egislature acted with full knowledge of relevant statutory and common law. Thus, two statutes covering the same subject matter should be harmonized and construed together when possible, in a way that facilitates their operation and the achievement of their goals.

*Id.* (internal quotation marks and citation omitted).

**{13}** We begin by examining the scope of the relevant sections of the Probate Code, including Section 45-3-805(A). Chapter eight of the Probate Code, entitled "creditors' claims," provides the procedures for the payment of creditors' claims against an estate. *See generally* NMSA 1978, §§ 45-3-801 to -816 (1975, as amended through 2011). Section 45-3-805(A) provides the priority scheme for payments when the assets in an estate are insufficient to pay all of the estate's creditors' claims. It divides creditors' claims against an estate into six classes and provides the priority for payment of each class. As Melissa points out, Section 45-3-805(A) only applies "[i]f the *applicable assets of the estate* are insufficient to pay all claims in full[.]" (Emphasis added.) She argues that the spousal support and attorney fee awards are not paid from Estate assets and therefore Section 45-3-805(A) does not apply. However, whether the awards are paid from Estate assets depends on whether the Legislature, when enacting Section 40-4-20(B), intended that the awards be "claims" under the Probate Code, or whether the Legislature intended the awards to be paid before the probate proceedings.

**{14}** The Probate Code defines "claims" as "includ[ing] liabilities of the decedent or protected person, whether arising in contract, in tort or otherwise and liabilities of the estate

5

that arise at or after the death of the decedent or after the appointment of a conservator, including funeral expenses and expenses of administration." NMSA 1978, § 45-1-201(A)(7) (2011). Generally, a judgment obtained in another court against a personal representative is considered an allowed claim against an estate, and the recipient may not execute on the judgment without complying with the Probate Code's creditors' claims provision. *See* § 45-3-806(D); § 45-3-812. We must therefore determine whether the Legislature intended a judgment for spousal support and attorney fees in a divorce action continued after the death of a party pursuant to Section 40-4-20(B) to follow this general scheme or whether Section 40-4-20(B) requires payment before the subsequent probate proceedings.

{15} Under the common law rule of abatement, the death of either party during the pendency of a marriage dissolution proceeding before the entry of a final decree divested the court of jurisdiction. *Trinosky v. Johnstone*, 2011-NMCA-045, ¶ 13, 149 N.M. 605, 252 P.3d 829. By enacting Section 40-4-20(B), the Legislature departed from the common law rule of abatement. *Trinosky*, 2011-NMCA-045, ¶ 13. The relevant portions of Section 40-4-20(B) provide that:

> Upon the filing and service of a petition for dissolution of marriage, separation, annulment, division of property or debts, spousal support, child support or determination of paternity . . . if a party to the action dies during the pendency of the action, but prior to the entry of a decree granting dissolution of marriage, separation, annulment or determination of paternity, the proceedings for the determination, division and distribution of marital property rights and debts, distribution of spousal or child support or determination of paternity shall not abate. The court shall conclude the proceedings as if both parties had survived.

{16} We first address Section 40-4-20(B) as applied to the spousal support award and conclude that, by the plain language of Section 40-4-20(B), the Legislature intended spousal support awards against an estate to be paid before the probate proceedings. First, Section 40-4-20(B) expressly provides that upon the filing of a petition for spousal support, the "*distribution* of spousal . . . support . . . shall not abate." (Emphasis added.) "Distribute" is defined as "to divide among several or many: deal out: apportion" or to "dispense, administer." Webster's Third New Int'l Dictionary 660 (Unabridged 1993). Based on this definition, by using the term "distribution," the Legislature intended that a district court in a domestic relations proceeding have more authority than simply awarding a judgment for spousal support. The Legislature intended that the court may issue the judgment and conclude the enforcement, or actual dispensing, of the award.

{17} Second, Section 40-4-20(B) directs the court to "conclude the proceedings as if both parties had survived." Although a final judgment with an award of spousal support may "conclude" a proceeding in some cases, a district court maintains jurisdiction to enforce the final judgment. *See Trinosky*, 2011-NMCA-045, ¶ 17; *Hall v. Hall*, 114 N.M. 378, 388, 838 P.2d 995, 1005 (Ct. App. 1992) (noting that a court has jurisdiction post-judgment to enforce

a judgment). By ordering the immediate payment of the spousal support award, the Divorce Court's order can properly be characterized as enforcing the award to ensure that the award be paid, especially considering that the Divorce Court was aware that the Estate's assets may be insufficient to pay all creditors' claims. *See Hall*, 114 N.M. at 388, 838 P.2d at 1005 (defining "[e]nforce" as "to compel obedience to, or to cause the provisions to be executed"). This action to enforce the final judgment is part of the "proceedings" that Section 40-4-20(B) mandates a court to "conclude."

{18} Our reading is consistent with the goals of the statutory provisions governing spousal support. *See Att'y Gen.*, 2011-NMSC-034, ¶ 10 ("[T]wo statutes covering the same subject matter should be harmonized and construed together when possible, in a way that facilitates their operation and the achievement of their goals." (internal quotation marks and citation omitted)). Spousal support is statutorily authorized by NMSA 1978, Section 40-4-7(B) (1997). It is characterized as "a continuation of the right to support." *Ellsworth v. Ellsworth*, 97 N.M. 133, 135, 637 P.2d 564, 566 (1981). It is "based on need, ability to self-support, and the equities of the particular situation." *Talley v. Talley*, 115 N.M. 89, 92, 847 P.2d 323, 326 (Ct. App. 1993) (internal quotation marks and citation omitted). Considering that spousal support is based on the recipient's need and that, by enacting Section 40-4-20(B), the Legislature clearly intended the recipient to receive spousal support regardless of the death of a spouse, it would frustrate the legislative purpose to require a recipient to wait, in some cases years, while probate proceedings take place in order to receive spousal support. Further, requiring the recipient to comply with the creditors' claims provision may lead to the recipient of the spousal support not receiving any support, if the debts to creditors exceed the estate's assets. These concerns are especially troublesome when considered in light of child support. Section 40-4-20(B) does not differentiate between spousal support and child support, treating them the same under the anti-abatement provision. If we were to hold that a spousal support award is simply a judgment or claim and that a district court in a domestic affairs proceeding cannot enforce the judgment against an estate, a child support award would require the same treatment and a decedent's child would be forced to wait in line with other creditors.

{19} Further, our reading is consistent with our Supreme Court's recent interpretation of Section 40-4-20(B) and case law regarding the nature of lump-sum spousal support awards. In *Oldham v. Oldham*, 2011-NMSC-007, ¶ 31, 149 N.M. 215, 247 P.3d 736, our Supreme Court "clarif[ied] the procedural sequence that must be followed in cases where one party to a pending divorce action dies before the entry of a final divorce decree." The Court held that "distributing the decedent's estate under the decedent's estate plan and the [Probate Code] without first establishing the decedent's share of the marital property and debts would be unworkable and contrary to legislative intent." *Id.* It additionally stated that the decedent's "estate must be defined through the entry of a Section 40-4-20(B) marital property judgment before that estate can be distributed in probate." *Oldham*, 2011-NMSC-007, ¶ 31. Underlying this holding is that "the domestic relations court must determine the extent of the decedent's separate property and share of the community property in order to determine what property will pass by intestacy." *Id.* ¶ 34. In other words, once the

7

surviving spouse receives property in the domestic relations proceeding from a property division, the property immediately becomes the property of the recipient spouse and therefore defines the assets in the estate. This holding applies to a spousal support award to the extent that a spousal support award creates an immediate property right in the assets of the estate that are awarded as spousal support.

{20} The spousal support award in this case was a lump-sum spousal support award even though the district court based the award on accrued monthly sums over a specific period of time. *See Deeds v. Deeds*, 115 N.M. 192, 194, 848 P.2d 1119, 1121 (Ct. App. 1993) ("Lump-sum alimony has been defined as the award of a definite sum of money[.]" (internal quotation marks and citation omitted)); *see also Michaluk v. Burke*, 105 N.M. 670, 675, 735 P.2d 1176, 1181 (Ct. App. 1987) ("[L]ump sum alimony [is] akin to accrued periodic alimony."). This Court has held that "[l]ump-sum alimony becomes a vested property right from the day of judgment." *Deeds*, 115 N.M. at 194, 848 P.2d at 1121; *see also* NMSA 1978, § 40-4-12 (1973) ("[T]he court may make an allowance to either spouse of the other spouse's separate property as alimony and the decree making the allowance shall have the force and effect of vesting the title of the property so allowed in the recipient."). Because it becomes a vested property right, the "sum must be paid in full, regardless of future events." *Deeds*, 115 N.M. at 194, 848 P.2d at 1121. Applying these principles to this case, the spousal support award became a vested property interest in Melissa when the Divorce Court issued its final order, and, therefore, the sum needed to pay the award was no longer part of the property of the Estate subject to the creditors' claims provision. *See Oldham*, 2011-NMSC-007, ¶ 34. Therefore, the spousal support award was not a claim under the Probate Code to which the creditors' claims provision would apply. The Divorce Court did not err by ordering that the Estate pay the spousal support award immediately before the probate proceedings.

{21} Regarding the attorney fee award, we first note that Section 40-4-20(B) does not specifically mention attorney fees. Further, some of the rationale we relied upon in determining that the Legislature did not intend spousal support awards to be considered "claims" under the Probate Code do not readily apply to the attorney fee award, including the plain language meaning of "distribution" and the immediate vesting of lump-sum spousal support awards as a property interest in the recipient.

{22} However, Section 40-4-20(B) states that "the *proceedings* . . . shall not abate" and that the "court shall conclude the *proceedings* as if both parties had survived." (Emphasis added.) Attorney fees in domestic relations cases are authorized by Section 40-4-7(A), which states that "[i]n any *proceeding* for the dissolution of marriage, division of property, disposition of children or spousal support . . . [t]he court may make an order, relative to the expenses of the proceeding, as will ensure either party an efficient preparation and presentation of his case." (Emphasis added.) Construing Section 40-4-7(A) and Section 40-4-20(B) together, the Divorce Court awarded the attorney fees as part of the "proceedings" covered by Section 40-4-20(B) that the Divorce Court is mandated to "conclude . . . as if both parties had survived." As we have determined, a district court maintains jurisdiction

8

to enforce the final judgment. *See Hall*, 114 N.M. at 388, 838 P.2d at 1005 (noting that a court has jurisdiction post-judgment to enforce a judgment). We construe the Divorce Court's order that the Estate pay the attorney fee award immediately to Melissa as enforcing the judgment. *See id.* (defining "[e]nforce" as "to compel obedience to, or to cause the provisions to be executed"). The Divorce Court therefore did not err in ordering the immediate payment of the attorney fee award in concluding the divorce proceedings.

{23} The Estate argues that Section 40-4-20(B) is simply a "survivorship statute" and that a judgment in an action continued pursuant to Section 40-4-20(B) should be treated the same as a judgment pursuant to other survivorship statutes, which is that the judgment is an allowed claim under the Probate Code. For support, the Estate cites NMSA 1978, Section 37-2-1 (1941), the survivorship statute for wrongful death and personal injury cases. However, the statutes are distinguishable. Section 37-2-1 only provides that "[t]he cause of action for wrongful death and the cause of action for personal injuries, shall survive the death of the party responsible therefor." Section 40-4-20(B) is more specific and states that the court must conclude the proceedings as if both parties survived as opposed to simply providing that the cause of action survives the responsible party's death.

{24} The Estate also makes several other arguments: (1) that when the Legislature intended that a payment for a claim be made against other creditors of an estate, it has expressly done so, (2) that the Divorce Court ordering the immediate payment injures other claimants and deprives them of due process, and (3) that by ordering the immediate payment of the awards, the Divorce Court potentially subjects the personal representative to personal liability or conflicting obligations. However, these arguments presume that the spousal support and attorney fee awards are claims against the Estate that will be paid from Estate assets. As we have determined, the awards are not claims against the Estate.

**FEDERAL INSOLVENCY ACT**

{25} The Estate next argues that the Divorce Court's order requiring the Estate immediately pay the spousal support and attorney fee awards to Melissa violates the Federal Insolvency Act, particularly 31 U.S.C. § 3713(a)(1)(B). Further, the Estate argues that immediate payment of the awards subjects the personal representative to personal liability under 31 U.S.C. § 3713(b). These arguments require statutory construction of 31 U.S.C. § 3713(a)(1)(B), and (b).

{26} 31 U.S.C. § 3713(a)(1)(B) provides that "[a] *claim* of the United States Government shall be paid first when . . . *the estate* of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor." (Emphasis added.) 31 U.S.C. § 3713(b) provides that "representative of . . . an estate . . . paying any part of a debt of the . . . estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government." Again, the Estate premises its argument on the assumption that the spousal support and attorney fee awards is an allowed claim and therefore payable from Estate assets. As we have determined, the awards are not claims

9

against the Estate, and, therefore, the Federal Insolvency Act does not apply.

## RES JUDICATA

**{27}** The Estate also argues that the Probate Court's August 13, 2009 order declaring that the spousal support and attorney fee awards are Class Six claims under the Probate Code was a final order for purposes of appeal, and, therefore, the Divorce Court erred by failing to give res judicata effect to the order. However, the Estate failed to show that it preserved the issue in the Divorce Court.

**{28}** "To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]" Rule 12-216(A) NMRA. In order "[t]o preserve error for review, a party must fairly invoke a ruling of the district court on the same grounds argued in this Court." *Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273. The primary purposes of the preservation requirements are (1) to specifically alert the district court to a claim of error so that the error may be corrected at that time, (2) to allow the opposing party adequate opportunity to respond to a claim of error, and (3) to create a sufficient record to allow this Court to make an informed decision regarding the contested issue. *Gerke v. Romero*, 2010-NMCA-060, ¶ 18, 148 N.M. 367, 237 P.3d 111, *cert. denied*, 2010-NMCERT-006, 148 N.M. 583, 241 P.3d 181.

**{29}** The Estate argues that it preserved the issue (1) by "inform[ing]" the Divorce Court of the Probate Court's order at a hearing on August 17, 2009, (2) in its response to Melissa's motion to release separate funds and request for expedited treatment, and (3) in its proposed findings of fact and conclusions of law. Yet, in none of these instances did the Estate argue that res judicata applied to the August 13, 2009 order, and the Divorce Court did not make a determination regarding the issue. In the cited proposed conclusion of law, the Estate states only that the August 13, 2009 order "was a final [o]rder and the time for appealing that [o]rder has run." At the August 17, 2009 hearing and in the response to Melissa's motion to release separate funds and request for expedited treatment, the Estate mentioned the Probate Court's August 13, 2009 order as a reason for not complying with the earlier order of the Divorce Court ordering the Estate to pay the interim spousal support and attorney fee awards immediately. The Estate did not "fairly invoke" a ruling as to the August 13, 2009 order's preclusive effect in the Divorce Court.

**{30}** Even if we were to address the merits of the issue, however, principles of res judicata do not apply. Res judicata requires that (1) the parties are the same; (2) the cause of action is the same; (3) there has been a final decision in the first suit; and (4) the first decision was on the merits. *Kirby v. Guardian Life Ins. Co. of Am.*, 2010-NMSC-014, ¶ 61, 148 N.M. 106, 231 P.3d 87. As we have discussed, the spousal support award was not a claim under the Probate Code to which the creditors' claims provision would apply. Further, we have construed the Divorce Court's order that the Estate pay the attorney fee award as enforcing the judgment. Thus, although the parties in these cases were the same, the cause of action in the Probate Court and the Divorce Court were not. Principles of claim preclusion do not

10

apply.

## ATTORNEY FEES ON APPEAL

**{31}** Melissa argues that she is entitled to attorney fees and costs for this appeal because the Estate's "quest in this litigation was not in good faith." In arguing bad faith, Melissa relies on findings from the district court that the Estate "undertook an over-vigorous attack" during the district court proceedings. Further, Melissa appears to argue that she is entitled to attorney fees because the Estate's position in this case is unsupported by law.

**{32}** New Mexico recognizes "a bad-faith exception to the American [r]ule under which parties typically pay their own fees." *ERICA, Inc. v. N.M. Regulation & Licensing Dep't*, 2008-NMCA-065, ¶ 54, 144 N.M. 132, 184 P.3d 444 (internal quotation marks and citation omitted). "[A] court may award attorney fees to vindicate its judicial authority and compensate the prevailing party for expenses incurred as a result of frivolous or vexatious litigation." *Id.* (internal quotation marks and citation omitted). However, this Court does not have the inherent authority to award attorney fees on appeal for proceedings in the district court. *Id.* Further, we do not determine that the Estate engaged in bad faith during this appeal. We therefore deny Melissa's request for attorney fees.

## CONCLUSION

**{33}** In a divorce proceeding continued after the death of a party pursuant to Section 40-4-20(B) in which the court awards lump-sum spousal support and attorney fees, the final judgment is not a "claim" against an estate for purposes of the Probate Code's creditors' claims provision. Therefore, in this case, the Divorce Court did not err in ordering that the Estate pay the spousal support and attorney fee awards immediately, before the probate proceedings. As a result, we affirm.

**{34}  IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**LINDA M. VANZI, Judge**

**Topic Index for *Estate of Nauert v. Morgan-Nauert*, Nos. 30,315/30,445**

11

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-PA | Preservation of Issues for Appeal |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-RJ | Res Judicata |
| | |
| **DR** | **DOMESTIC RELATIONS** |
| DR-AF | Attorney Fees |
| DR-DM | Dissolution of Marriage |
| DR-SS | Spousal Support |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |
| | |
| **WL** | **WILLS, TRUSTS AND PROBATE** |
| WL-AE | Administration of Estate |
| WL-CE | Claims Against Estate |