The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: April 8, 2026

**No. A-1-CA-41585**

**NEW MEXICO AUTOMOTIVE DEALERS ASSOCIATION and AUTOMUNDO DE GARCIA, LTD. COMPANY,**

      Appellants,

v.

**NEW MEXICO ENVIRONMENTAL IMPROVEMENT BOARD and ALBUQUERQUE-BERNALILLO COUNTY AIR QUALITY CONTROL BOARD,**

      Appellees,

and

**NATURAL RESOURCES DEFENSE COUNCIL, SOUTHWEST ENERGY EFFICIENCY PROJECT, COALITION FOR CLEAN AFFORDABLE ENERGY, 350 NEW MEXICO, WESTERN RESOURCE ADVOCATES, PROSPERITY WORKS, CONSERVATION VOTERS NEW MEXICO, SIERRA CLUB, NEW MEXICO INTERFAITH POWER AND LIGHT, CENTER FOR CIVIC POLICY, WESTERN ENVIRONMENTAL LAW CENTER, CALSTART, NEW MEXICO ENVIRONMENT DEPARTMENT, and 350 SANTA FE,**

      Intervenors-Appellees,

and

**NICHOLAS R. MAXWELL,**

    Intervenor,

**IN THE MATTER OF PETITION TO AMEND**
**EXISTING REGULATIONS 20.2.91 NMAC and**
**20.11.104 NMAC, NEW MOTOR VEHICLE**
**EMISSION STANDARDS.**

**APPEAL FROM ENVIRONMENTAL IMPROVEMENT BOARD and**
**THE ALBUQUERQUE BERNALILLO AIR QUALITY CONTROL BOARD**
**Felicia Orth, Administrative Hearing Officer**

Atler Law Firm, P.C.
Timothy J. Atler
A. Howland Swift
Jazmine J. Johnston
Albuquerque, NM

Domenici Law Firm, P.C.
Pete Domenici
Albuquerque, NM

for Appellants

Raúl Torrez, Attorney General
Ellen Venegas, Assistant Solicitor General
Blaine N. Moffatt, Division Director
Seth C. McMillan, Deputy Solicitor General
Santa Fe, NM

for Appellee New Mexico Environmental Improvement Board

Antoinette Sedillo Lopez
Albuquerque, NM

for Appellee City of Albuquerque-Bernalillo County Air Quality Control Board

Baake Law, LLC
David R. Baake
Las Cruces, NM

for Intervenors-Appellees Southwest Energy Efficiency Project,
350 New Mexico, Western Resource Advocates,
Prosperity Works, Conservation Voters New Mexico,
Sierra Club, New Mexico Interfaith Power and Light,
Center for Civic Policy, Western Environmental
Law Center, and 350 Santa Fe

Andrew P. Knight, Assistant General Counsel
Brecken L. Scott, Assistant General Counsel
Santa Fe, NM

for Intervenor-Appellee New Mexico Environment Department

Charles de Saillan
Santa Fe, NM

for Intervenor-Appellee Coalition for Clean Affordable Energy

Vivian Wang
Alexis Mena
New York, NY

for Intervenor-Appellee Natural Resources Defense Council

**OPINION**

**YOHALEM, Judge.**

{1}     Appellants New Mexico Automotive Dealers Association and Automundo De Garcia, Ltd. Co. (collectively, Auto Dealers) appeal the adoption of the State of California's Advanced Clean Cars II (ACC II) new motor vehicle emission control standards for model years 2027 through 2032 by the New Mexico Environmental Improvement Board (EIB) and the Albuquerque-Bernalillo County Air Quality Control Board (AQCB)[1] (collectively, the Boards).[2] *See* 20.2.91 NMAC (7/1/2022 as amended through 12/31/2023) (EIB statewide regulations); 20.11.104 NMAC (7/1/2022 as amended through 12/31/2023) (AQCB regulations). The regulations provide, in relevant part, that an increasing percentage of new vehicles provided to New Mexico in each model year, beginning with model year 2027, must be zero emission vehicles (ZEVs).[3] Auto Dealers challenge the validity of these regulations

---

[1]Regulations adopted by the EIB apply to all nontribal areas of the State of New Mexico, with the exception of the City of Albuquerque and Bernalillo County, where the regulations adopted by the AQCB apply. *See* NMSA 1978, §§ 74-2-4, -5(B) (2021); Albuquerque, N.M., Rev. Ordinance of Albuquerque, ch. 9, art. 5, §§ 9-5-1-4(B), -6 (1974, amended 1993); Bernalillo County, N.M., Code of Ordinances, ch. 30, art. II, §§ 30-33, -35 (1994).

[2]Intervenors-Appellees Climate Advocates and the New Mexico Environment Department (NMED) are also parties to this appeal. They have filed briefs on appeal arguing in favor of the validity of the regulations, which we have reviewed and considered.

[3]The EIB and AQCB regulations incorporate by reference Title 13 of the California Code of Regulations' new vehicle emission control standards for model years 2027 through 2032. *See* 20.2.91.101(A) NMAC; 20.2.91.102 NMAC;

under both the federal Clean Air Act (CAA), Pub. L. 101-549, 104 Stat 2399 (1990), 42 U.S.C. §§ 7401-7671q, and the New Mexico Air Quality Control Act (AQCA), NMSA 1978, §§ 74-2-1 to -17 (1967, as amended through 2021). Not persuaded by Auto Dealers' arguments, we affirm.[4]

## BACKGROUND

**The Federal Regulatory Scheme Governing Vehicle Emissions**

{2}    The CAA directs the EPA to adopt regulations setting emission control standards for new motor vehicles nationwide. *See* 42 U.S.C. § 7521(a). To ensure

---

20.11.104.101(A) NMAC, 20.11.104.102 NMAC; *see also* Cal. Code Regs., tit. 13, § 1962.4(c)(1)(B) (2022) (mandating 43 percent ZEV manufacturing percentage requirement at model year 2027 and 82 percent by model year 2032). Because the regulations adopted by the EIB and the AQCB relevant to this appeal are identical and were adopted following a joint public hearing where the Boards heard the same evidence, we discuss the regulations together, and do not generally distinguish between the EIB and the AQCB.

[4]We note that Auto Dealers previously filed a motion to stay this appeal with this Court. Auto Dealers' request for a stay was based on pending litigation in federal court in California challenging Congress's authority to withdraw by Congressional resolution a waiver previously granted to California by the Environmental Protection Agency (EPA). New Mexico, along with California and a number of other states, is a party-plaintiff in that lawsuit. *See* Complaint for Declaratory and Injunctive Relief, *State of Cal. v. United States*, No. 3:25-cv-04966 (N.D. Cal. June 12, 2025). We acknowledge that the outcome of this pending litigation is uncertain, and some or all of the New Mexico regulations at issue in this appeal could possibly be invalidated. We nevertheless denied the stay. We were persuaded by the Boards' and Intervenors' request that we proceed to decide this appeal so that automobile manufacturers and other interested parties are on timely notice of New Mexico's choice of the California ACC II standards, and so that New Mexico will be ready to enforce the ZEV standards without the confusion and delay that would be created by having to wait for this appeal to be resolved should the federal courts allow the ACC II standards to be implemented.

national uniformity, Congress preempts state law concerning new vehicle emissions, preventing each state from setting its own standards. *See* 42 U.S.C. § 7543(a). Congress makes one exception, which is central to this case: the EPA is authorized to grant a waiver of preemption to California—the only state having vehicle emission standards in place prior to the enactment of the CAA. *See* 42 U.S.C. § 7543(a)-(b). Section 177 of the CAA, 42 U.S.C. § 7507, permits states to choose to "piggyback" on California's new vehicle emission control standards, so long as the standards adopted by another state "are identical to the California standards for which a waiver has been granted [by the EPA] for such model year," and are adopted by both California and that state "at least two years before commencement of such model year." 42 U.S.C. § 7507(1), (2). The model year commences on January 1 of such calendar year. *See* 40 C.F.R. § 85.2302.

**New Mexico Law Governing Vehicle Emission Control Standards**

{3}     In New Mexico, the Boards are authorized by statute to "adopt, promulgate, publish, amend and repeal rules and standards consistent with [AQCA] to attain and maintain national ambient air quality standards and prevent or abate air pollution." Section 74-2-5(B)(1). As previously noted, the AQCA provides that rules adopted by the EIB apply to nontribal areas of the state outside of the City of Albuquerque and Bernalillo County, *see* § 74-2-3(B), and those adopted by the AQCB apply to Albuquerque and Bernalillo County. *See supra* note 1. Our Legislature's delegation

of rulemaking authority authorizes the Boards to adopt new vehicle emission control standards for New Mexico that comply with or exceed federal requirements. *See* § 74-2-5(D)(2), (3) (authorizing the Boards to adopt regulations that are "at least as stringent" as any federal emission standard or limitation).

**New Mexico's Adoption of California's ACC II Emission Standards**

{4}     In 2012, California adopted new vehicle emission standards known as Advance Clean Cars I (ACC I). *See* Notice of Decision Granting a Waiver of CAA Preemption for California's Advanced Clean Car Program, 78 Fed. Reg. 2112 (Jan. 9, 2013). The ACC I regulations set California's new vehicle emission control standards well in advance for model years 2018 through 2025. *Id.* The EPA granted California a waiver of EPA's federal standards on January 9, 2013. *Id.*; *see also* Cal. Code Regs. tit. 13, § 1962.2 (2012) (ZEV mandates for year 2018 through 2025).

{5}     On July 1, 2022, the Boards adopted the California ACC I new vehicle emission control standards for New Mexico, beginning with model year 2026. *See* 20.2.91.2 NMAC (7/1/2022); 20.11.104 NMAC (7/1/2022) The EIB's New Mexico rules "adopt and implement the California vehicle emission standards and requirements statewide pursuant to Section 177 of the federal [CAA]." *See* 20.2.91.6 NMAC (7/1/2022); *see also* 20.11.104.6 NMAC (7/1/2022) (stating same for AQCB regulation).

**{6}** Four months after the Boards adopted New Mexico rules incorporating verbatim the California ACC I standards, on November 30, 2022, California adopted ACC II emission standards, effective beginning in model year 2026. *See* Cal. Code Regs. tit. 13, § 1962.4 (2022). Relevant to this appeal, California's new vehicle emission standards for 2026 and beyond require manufacturers of automobiles and other covered vehicles to provide increasing percentages of ZEVs each model year to automobile dealers in California, reaching 100 percent ZEVs in model year 2035 (the ZEV standards).[5] *See* Cal. Code Regs. tit. 13, § 1962.4(c) (2022).

**{7}** In July 2023, the NMED and the City of Albuquerque Environmental Health Department petitioned the Boards to amend New Mexico's emission control regulations by adopting California's ACC II emission standards, including the new ZEV standards. Auto Dealers opposed the petitions, specifically objecting to New Mexico adopting California's ZEV standards.

**{8}** In November 2023, the Boards held a joint rulemaking hearing to consider the petitions' request to amend New Mexico's new vehicle emission control regulations. Following the joint public rulemaking hearing, both Boards issued identical regulations incorporating the California ACC II standards, including the ZEV

---

[5]The Boards adopted other aspects of California's ACC II. *See* 20.2.91.118 NMAC; 20.2.91.119 NMAC; 20.2.91.120 NMAC; 20.11.104.118 NMAC; 20.11.104.119 NMAC; 20.11.104.120 NMAC. Auto Dealers challenge only the ZEV standards in this appeal.

standards, beginning with model year 2027 and continuing through model year 2032, for "all new motor vehicles imported, sold, leased, or registered with the New Mexico Motor Vehicle Division." *See* 20.2.91.101 NMAC; 20.2.91.108 NMAC; 20.11.104.101 NMAC; 20.11.104.108 NMAC. The Boards explained that by incorporating the relevant provisions of the California Code of Regulations by reference, they ensured compliance with the "identicality" requirement of Section 177 of the CAA, 42 U.S.C. § 7507(1).

{9}     We note that the EPA granted California's request for a waiver for its ACC II emission standards in December 2024, thirteen months after the Boards' adoption of the ACC II standards in New Mexico, and two years before the beginning of the first model year covered by the ACC II regulations in New Mexico. *See* Notice of Decision, 90 Fed. Reg. 642-43 (Jan. 6, 2025) (publishing EPA's December 2024, grant of a waiver of CAA preemption for California's ACC II regulations).

{10}     We reserve review of the evidence presented at the rulemaking hearing and of the Boards' findings and conclusions for our discussion of the issues on appeal.

**DISCUSSION**

{11}     Auto Dealers appealed the Boards' new vehicle emission regulations to this Court, pursuant to Section 74-2-9 of the New Mexico AQCA, asking this Court to set aside the regulations incorporating the California ZEV standards for new motor vehicles. Section 74-2-9(A) provides that "[a]ny person adversely affected by an

administrative action taken by the [EIB or the AQCB] may appeal to the court of appeals." All such appeals "shall be upon the record made at the hearing." *Id.* This Court is permitted by Section 74-2-9(C) to "set aside the action [of the Boards] only if found to be: (1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with law."

{12}    We first consider Auto Dealers' arguments claiming error as a matter of federal law in the Boards' adoption of the ZEV standards. Auto Dealers argue that California's ZEV standards are not "emission control standards" as described in the CAA that are subject to the identicality requirement of Section 177 of the CAA, and, therefore, the Boards acted arbitrarily and capriciously by not taking evidence and considering ZEV standards unique to New Mexico. The Boards argue first that this issue was not preserved for our review, and then point to federal precedent that resolves this issue against Auto Dealers' argument.

{13}    After a careful review of the record, we agree with the Boards that Auto Dealers did not make this argument to the Boards either at the hearing, or in written pleadings before or after the hearing. It was, therefore, not preserved for our review. We are not persuaded by Auto Dealers' request that we exercise our discretion to address this argument under the public interest exception to our preservation requirements. We, therefore, decline to address Auto Dealers' unpreserved argument.

{14}    We next address Auto Dealers' second federal statutory challenge to the Boards' adoption of the California ZEV standards. Auto Dealers argue that the Boards' actions were contrary to the plain language of Section 177 of the CAA, 42 U.S.C. § 7507(1), which Auto Dealers claim allows New Mexico to adopt California's regulations only *after* the EPA has granted a waiver to California. It is undisputed that EPA did not grant California's waiver request until December 2024, thirteen months after the New Mexico regulations were adopted. We agree with the decision of the federal Court of Appeals for the Second Circuit in *Motor Vehicle Manufacturers Ass'n of United States, Inc. v. New York State Department of Environmental Conservation* (*MVMA*), 17 F.3d 521, 533-36 (2d Cir. 1994). In a well-reasoned opinion, the Second Circuit held in *MVMA* that other states may adopt California's emission control regulations before EPA grants California a waiver, but may not take any action to enforce their regulations until the EPA grants the waiver. *Id.* The Boards' adoption of rules effective for model year 2027 meet this standard.

{15}    Finally, we address Auto Dealers' central argument on appeal: their claim that the Boards acted arbitrarily and capriciously and without substantial support in the record as a whole when they concluded that adopting California's ZEV standards beginning in model year 2027 is a technically practicable and economically reasonable choice for New Mexico. We are not persuaded that the Boards' decision is arbitrary, capricious or without sufficient support in the record.

{16} For the reasons stated, we affirm the validity of the regulations, including the ZEV standards, adopted by the Boards.

**I.      Auto Dealers Failed to Preserve Their Statutory Construction Argument Concerning the Definition of an "Emission Control Standard" and We Decline to Apply the Public Interest Exception to Preservation**

{17} Rule 12-601(B) NMRA provides that the Rules of Appellate Procedure apply to appeals from agency rulemaking. We, therefore, apply our rule requiring preservation, Rule 12-321 NMRA, and the precedent we have developed under that rule, to Auto Dealers' legal claims under Section 177 of the CAA. *See Martinez v. Pub. Emps. Ret. Ass'n of N.M.*, 2012-NMCA-096, ¶ 24, 286 P.3d 613 ("Preservation of issues is required on appeal from decisions in administrative proceedings."). Auto Dealers' statutory construction argument is the predicate for their claim that the Boards' failure to consider evidence supporting ZEV standards different from those adopted by California was arbitrary and capricious.

{18} Rule 12-321(A) requires that in order "[t]o preserve an issue for review, it must appear that a ruling or decision by the [lower tribunal] was fairly invoked." Our precedent explains that "[t]he party claiming error must have raised the issue below clearly and have invoked a ruling by the [lower tribunal]." *See Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 12, 125 N.M. 748, 965 P.2d 332 (citation omitted). In order to invoke a ruling from a tribunal, a party must have asserted a legal principle, developed any facts necessary to show that the legal

principle applies, and brought the issue to the attention of the decision-maker. *See State v. Adame*, 2020-NMSC-015, ¶ 13, 476 P.3d 872. "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the [lower tribunal] on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717.

{19}     This Court has described three purposes served by our preservation requirements: "(1) to specifically alert the [tribunal] to a claim of error so that the error may be corrected at that time, (2) to allow the opposing party adequate opportunity to respond to a claim of error, and (3) to create a sufficient record to allow this Court to make an informed decision regarding the contested issue." *Estate of Nauert v. Morgan-Nauert*, 2012-NMCA-037, ¶ 28, 274 P.3d 799.

**A.     Preservation**

{20}     The Boards contend that Auto Dealers' two related contentions on appeal (1) that the CAA allowed the Boards to consider ZEV percentages different than California's, and (2) that the Board acted arbitrarily and capriciously by not taking evidence on and considering ZEV standards for New Mexico that differed from both the federal and California standards, were not preserved for our review. Auto Dealers cite in response to their proposed statement of reasons submitted to the Boards prior to the public hearing, claiming that this statement sufficiently preserved both issues. The paragraphs cited by Auto Dealers, however, refer to the argument, presented by

Auto Dealers at the public hearing, that the ACC I California standards already adopted by New Mexico meet the requirements of Section 177 of the CAA, and should be left in place to see how these standards work in 2026 before ACC II ZEV standards are considered for later model years. We do not agree that Auto Dealers' request to the Boards to stick with the ACC I ZEV percentages for another year, rather than adopting California's new ACC II ZEV standards, alerted the Boards and the opposing parties to the complex statutory interpretation argument Auto Dealers now make on appeal: that the ZEV standards are not "standards relating to control of emissions," as that phrase is used in Section 177 of the CAA, because the ZEV standards relate only to the supply of new ZEVs, rather than the imposition of permissible emissions for all vehicles.

{21}   This statutory construction argument is a far cry from the request made by Auto Dealers to delay adoption of California's ACC II ZEV standards and keep the ACC I standards until more data could be gathered on the New Mexico market. This argument did not satisfy any of the purposes of preservation: the Boards were not alerted that they must consider and decide the statutory construction arguments now made on appeal, the state agencies and intervenors supporting the adoption of the regulations were not alerted that they needed to respond to this statutory interpretation argument, and no record was made concerning the alternative ZEV

standards Auto Dealers now argue that the Boards failed to consider. *See Estate of Nauert*, 2012-NMCA-037, ¶ 28.

**B.      General Public Interest Exception to Preservation**

{22}      Concluding that Auto Dealers' statutory construction argument about the meaning of "emission control standards" under Section 177 of the CAA was not preserved before the Boards, we turn to Auto Dealers' request that we apply the general public interest exception to preservation. Auto Dealers argue that we should consider their statutory construction argument even though it is raised for the first time on appeal "because the heightened ZEV mandate will have a resounding effect on the automobile industry, which is a matter of public interest."

{23}      Rule 12-321(B)(2)(a) allows this Court, in its discretion, to review unpreserved issues involving "general public interest." Reviewing courts "have invoked the general public interest exception to the preservation rule where review . . . is likely to settle a question of law affecting the public at large or a great number of cases and litigants in the near future." *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 28, 133 N.M. 669, 68 P.3d 909; *see State v. Candelaria*, 2019-NMCA-032, ¶ 22, 446 P.3d 1205 (applying the general public interest exception because the case presented "an issue of law that is likely to recur in the Second Judicial District Court, and perhaps elsewhere").

**{24}** The federal law regarding motor vehicle emission standards is in flux. *See supra* note 4. It is far from clear that the issues raised by Auto Dealers on appeal regarding California's ACC II ZEV standards will arise again in New Mexico. Nor is the public without guidance on this issue if it does arise again. Auto Dealers concede on appeal that the federal statutory construction issue they raise for the first time on appeal has been addressed by several federal courts of appeals, with consistent results that reject Auto Dealers' argument that the California ZEV standards are not "emission control standards" under the CAA. *See Am. Auto. Mfrs. Ass'n v. Cahill*, 152 F.3d 196, 200 (2nd Cir. 1998); *Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot.*, 208 F.3d 1, 4 (1st Cir. 2000) (holding that "ZEV mandates are [emission control] standards within the meaning of [the CAA]" (internal quotation marks omitted)).

**{25}** We conclude that there is no significant public interest in this Court resolving this unpreserved question on the inadequate record in this case. We therefore do not consider Auto Dealers' statutory interpretation argument on appeal or their related argument that the Boards failed to elicit and consider evidence on alternative ZEV standards unique to New Mexico. *See Selmeczki v. N.M. Dep't of Corr.*, 2006-NMCA-024, ¶ 24, 139 N.M. 122, 129 P.3d 158 (declining to review an issue not preserved in the relevant administrative proceeding).

**II.    Section 177 of the CAA Does Not Prohibit States from Adopting California's Regulations Prior to the Grant of an EPA Waiver for California**

{26}    We next address the second federal statutory argument Auto Dealers make on appeal: that New Mexico was required to wait to adopt California's ACC II standards until California received a waiver from the EPA under Section 209(b)(1) of the CAA, 42 U.S.C. § 7543(b)(1). Assuming without deciding that the issue was sufficiently preserved for our review, we agree with the federal courts to consider this issue that states are permitted to *adopt* the California regulations prior to issuance of an EPA waiver, so long as the state regulations are not enforced until EPA grants California a waiver.

**A.    Preservation**

{27}    The EIB and Intervenor Climate Advocates argue that Auto Dealers failed to preserve this issue for our review on appeal. They claim that Auto Dealers' inclusion of this issue in a single paragraph of their written statement of reasons and order, submitted to the Boards two days before the hearing was set to begin, was not sufficient to preserve this issue for our review on appeal.

{28}    Auto Dealers' statement of reasons reads as follows: "New Mexico may not adopt California vehicle emission standards unless and until EPA grants California a waiver pursuant to Section 209(b)(1) of the CAA." *See* 42 U.S.C. § 7543(b)(1). Auto Dealers' quoted statement was not accompanied by argument or citation to

authorities and Auto Dealers did not raise or argue this issue during the course of the public hearing. Moreover, neither Board addressed this argument in its findings and conclusions.

{29} Although preservation of this issue is less than ideal, because this is purely a question of statutory construction that we conclude lacks merit, we assume without deciding that Auto Dealers' statement of reasons prior to the hearing was sufficient to preserve it for our review and proceed to address it on its merits.

**B.      Construction of Section 177 of the CAA**

{30} Section 177 of the CAA, 42 U.S.C. § 7507, states, in relevant part, as follows:

> Any [s]tate may adopt and enforce for any model year standards relating to control of emissions from new motor vehicles . . . if—
>
>  (1) such standards are identical to the California standards for which a waiver has been granted for such model year, and
>
>  (2) California and such [s]tate adopt such standards at least two years before commencement of such model year.

{31} It is undisputed that EPA granted California a waiver for its ACC II standards, including the ZEV standards adopted by New Mexico, in December 2024, and published that waiver in the Federal Register on January 6, 2025. Auto Dealers do not claim any violation of the two-year advance notice requirement of 42 U.S.C. §7501(2).

{32} Auto Dealers claim that the use of the past tense in the phrase in 42 U.S.C. § 7507(1), noted above, stating that any state's regulations must be "identical to the

California standards for which a waiver *has been granted* for such model year," indicates that the EPA waiver "must have already been granted [by EPA] before another state can adopt or enforce the standards."

**{33}** "Our duty, when interpreting federal statutes, is to give effect to the intent of the legislative body. In this instance, we endeavor to give effect to the intent of Congress." *State v. Branham*, 2004-NMCA-131, ¶ 11, 136 N.M. 579, 102 P.3d 646 (citation omitted). In construing a federal statute, we look to federal precedent for guidance. *See Inv. Co. of the Sw. v. Reese*, 1994-NMSC-051, ¶ 16, 117 N.M. 655, 875 P.2d 1086 ("When a case concerns a right or obligation created by federal law, a state court should look to federal precedent for guidance in interpretation.").

**{34}** Federal courts, construing federal statutes, apply virtually the same principles of statutory construction applied by this Court to construe New Mexico statutes. Primary among these rules of construction is the directive that courts look first to the plain meaning of the statute. *Compare MVMA*, 17 F.3d at 531 (stating that "[t]he familiar rules of statutory construction look first to the language of the statute itself" (internal quotation marks and citation omitted)), *with Leger v. Gerety*, 2022-NMSC-007, ¶ 27, 503 P.3d 349 ("The first and most obvious guide to statutory interpretation is the wording of the statutes themselves." (internal quotation marks and citation omitted)). Where there is ambiguity, both federal and state courts look beyond the plain meaning to other tools of statutory interpretation to discern the intent of the

legislative body. *Compare MVMA*, 17 F.3d at 531 ("Even when the meaning of language seems apparent, it must be remembered that we are attempting to ascertain Congress' purpose; where ambiguity resides in a statute, legislative history and other tools of interpretation may be employed to determine legislative purpose more perfectly."), *with State v. Smith*, 2004-NMSC-032, ¶¶ 10-11, 136 N.M. 372, 98 P.3d 1022 (applying the rules of statutory construction to determine legislative intent when the language of a statute is ambiguous).

{35}     The statutory language relied on by Auto Dealers here allows New Mexico to "adopt and enforce" emission standards "identical to the California standards for which a waiver has been granted." *See* 42 U.S.C. § 7507(1). Although this language plainly makes the EPA's grant of a waiver to California a precondition to some type of action by a state concerning its regulations, it is less than clear whether that action is the *adoption* or the *enforcement* of the California standards. Auto Dealers focus on the grant of the waiver preceding the *adoption* of the regulations, claiming that the statutory language prohibits New Mexico from taking any action to adopt regulations until the EPA actually grants California a waiver.

{36}     In examining the language of the statutory section at issue here, we note that the statute's grant to the states of authority "to adopt *and* enforce" emission standards identical to California's standards suggests that Congress is thinking about adoption or promulgation of regulations and enforcement of those regulations separately,

creating uncertainty about whether Congress intends that the EPA waiver be a precondition to both the adoption and enforcement of state regulations, or a precondition only to the enforcement of the state regulations. In its opinion in *MVMA*, the federal Court of Appeals for the Second Circuit, finding this provision ambiguous, addressed this very question. 17 F.3d at 531. In *MVMA*, the federal court noted that Congress set a common deadline in Subsection (2) for both California regulations and state regulations adopting the California standards. *See id.* at 525; 42 U.S.C. § 7507(2). The Second Circuit concluded that this deadline is designed to ensure that automobile manufacturers have a two-year period to prepare in advance of the model year regulated, both in California and in other states that adopt California's regulations. *Id.* at 533-34. The Second Circuit noted that a common sense reading of 42 U.S.C. § 7507 as a whole allows states to adopt the California regulations in advance of EPA approval in order to be able to meet this two-year requirement when EPA grants the California waiver. So long as action to enforce the regulations is not taken until EPA grants California a waiver, and two years remain before the first model year covered, the court finds that the purpose of this section is satisfied. *Id.* Finally, the court notes that, just as the California regulations are promulgated *before* being submitted to the EPA for a waiver, other state regulations must be promulgated and ready to go into effect when the waiver is granted in order to meet the requirement of Subsection (2) that the regulations be adopted two years

prior to the first model year addressed. *Id.* The Board's regulations, beginning with model year 2027, satisfy this requirement.

{37}    In an unpublished decision, the United States District Court for the District of Massachusetts agreed with the Second Circuit's conclusion in *MVMA*, pointing out that requiring states to wait to adopt California's regulations until the EPA granted a waiver "seem[s] likely to lead to utter chaos" by precluding other states from implementing California standards in the same model year as California. *Am. Auto. Mfrs. Ass'n v. Greenbaum*, No. 93-10799-MA, slip op. at *8 (D. Mass. Oct. 27, 1993), *aff'd sub nom. Am. Auto. Mfrs. Ass'n v. Comm'r, Mass. Dep't of Env't Prot.*, 31 F.3d 18 (1st Cir. 1994). By adopting, without enforcing, standards identical to California's before the EPA issues the California waiver, a state puts manufacturers on notice that it intends to take the same path as California. *MVMA*, 17 F.3d at 534.

{38}    We agree with the approaches taken by the Second Circuit and the District of Massachusetts and hold that it was permissible for the Boards to adopt standards identical to California's prior to the EPA's granting a waiver, "so long as the [state] ma[de] no attempt to enforce the plan prior to the time when the waiver [was] actually obtained." *See id.*

### III. The Board Did Not Act Arbitrarily, Capriciously, or Without Substantial Evidence in Weighing the Technical Practicability and Economic Reasonableness of the ZEV Standards

{39} Auto Dealers challenge as arbitrary and capricious and without support in the record the Boards' finding that the California ZEV mandate is "both technically practicable and economically reasonable in the methods it employs to reduce air contaminants from the sources involved."

### A. Standard of Review

{40} "When reviewing findings of fact made by an administrative agency we apply a whole record standard of review." *Fitzhugh v. N.M. Dep't of Lab.*, 1996-NMSC-044, ¶ 23, 122 N.M. 173, 922 P.2d 555. "In applying whole record review, this Court reviews both favorable and unfavorable evidence to determine whether there is evidence that a reasonable mind could accept as adequate to support the conclusions reached by the fact[-]finder." *Ruiz v. Los Lunas Pub. Schs.*, 2013-NMCA-085, ¶ 5, 308 P.3d 983 (internal quotation marks and citation omitted). We are cautioned by our Supreme Court, however, that "[w]hole record review is not an excuse for an appellate court to reweigh the evidence and replace the fact[-]finder's conclusions with its own." *Herman v. Miners' Hosp.*, 1991-NMSC-021, ¶ 10, 111 N.M. 550, 807 P.2d 734. If there is substantial evidence to support an agency, board, or commission's findings of fact, we affirm those findings, rejecting them "only if conflicting evidence renders incredible the evidence in support of the decision."

*Albuquerque Bernalillo Cnty. Water Util. Auth. v. N.M. Pub. Reg. Comm'n*, 2010-NMSC-013, ¶ 89, 148 N.M. 21, 229 P.3d 494 (internal quotation marks and citation omitted).

**{41}** We will also set aside a regulation if we find that the agency or board has acted arbitrarily and capriciously in adopting the regulation. "We define 'arbitrary' and 'capricious' acts as those that may be considered [willful] and unreasonable, without consideration, and in disregard of the facts and circumstances." *Wilcox v. N.M. Bd. of Acupuncture & Oriental Med.*, 2012-NMCA-106, ¶ 7, 288 P.3d 902 (alteration, internal quotation marks, and citation omitted).

**B.    The Governing Law on "Technical Practicability and Economic Reasonableness"**

**{42}** The Boards are authorized by our Legislature to adopt regulations for the purpose of "prevent[ing] or abat[ing] air pollution." *See* § 74-2-5(A). In making its rules, the Boards are further directed by the AQCA as follows:

> F.  In making its rules, the [EIB] or the [AQCB] shall give weight it deems appropriate to all facts and circumstances, including:
>
> (1)    character and degree of injury to or interference with health, welfare, visibility and property;
>
> (2)    the public interest, including the social and economic value of the sources and subjects of air contaminants; and
>
> (3)    technical practicability and economic reasonableness of reducing or eliminating air contaminants from the sources involved and previous experience with equipment and methods available to control the air contaminants involved.

*See* § 74-2-5(F)(1)-(3).

**C.     The Evidence in the Record Weighed by the Boards to Determine the Technical Practicability and Economic Reasonableness of the ZEV Standards**

{43}     Auto Dealers challenge the findings of the Boards that the regulations as amended by the Boards are "technical[ly] practicable and economically reasonable" under the third paragraph of Section 74-2-5(F). Auto Dealers claim that the Boards improperly relied on "unsupported assumptions" and "on representations that were not New Mexico-specific and did not directly relate to the ZEV mandate" in finding the ZEV standards technically practicable and economically reasonable.[6]

{44}     We understand Auto Dealers to argue that it was arbitrary and capricious for the Boards to afford greater weight to the evidence concerning the anticipated direction of the automobile industry, advances underway in ZEV technology, the anticipated reduction in purchase price of ZEVs, and the charging stations and other infrastructure under construction in New Mexico, and less weight to Auto Dealers' evidence based on their direct experience "on the ground" in New Mexico involving

---

[6] Auto Dealers begin their argument by contending that the process was "rushed," but concede that the Boards complied with all notice or timing requirements applicable to the rulemaking process. Because compliance with the notice requirements set by law is adequate, and Auto Dealers offer no argument to the contrary, we do not address this contention.

the difficulty of selling electric vehicles to New Mexico consumers and the differences in geography, climate and population from California.

{45} Given our focus is on the Boards' statutory authority to "give [the] weight it deems appropriate to all facts and circumstances," § 74-2-5(F), and on the evidence supporting the Boards' decision, as is required by our standard of review, we are not persuaded the Boards' finding that the ZEV mandates are technically practicable and economically reasonable for New Mexico is arbitrary, capricious, or unsupported by the evidence. *See Wilcox*, 2012-NMCA-106, ¶ 7 ("[T]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." (alteration, internal quotation marks and citation omitted)). We explain.

{46} Auto Dealers claim that ZEVs are not affordable for New Mexicans, pointing to the testimony of Auto Dealers' representatives about low demand for ZEVs in New Mexico during the years preceding the 2023 public hearing, the higher price of ZEVs during those years compared to gasoline automobiles, and New Mexico's market for ZEVs being skewed to high-income New Mexicans. The record, however, also includes testimony of officials from the New Mexico Environment Department reporting that vehicle manufacturers have invested billions of dollars aimed at reducing the price of ZEVs by the 2027 model year, when the New Mexico rules would go into effect, and ZEVs "will be able to be available to New Mexicans

at an affordable price." Climate Advocates, one of the intervenors supporting the regulations, presented data showing that "new [Z]EVs are expected to be about $5,400 cheaper than new internal combustion engine vehicles by [model year] 2027." Climate Advocates also offered evidence that there was currently "exponential growth in the sale of [Z]EVs" nationally, and that sales in New Mexico were growing, with 2023 sales stronger than previous model years. A manufacturer of electric vans and pickup trucks testified that both the demand for and availability of ZEVs was growing well ahead of schedule in California and that early adoption of the ACC II standards by New Mexico was necessary to allow vehicle manufacturers and related industries a reasonable timeline to address a market that was undergoing a transformation. There was also evidence that if the Boards adopted the new regulations, the increased availability of new ZEVs would help bring down prices by creating a secondary market for used ZEVs, offering a less expensive option for New Mexico consumers.

{47}     Auto Dealers also claim on appeal that the Boards erred by wrongly "assum[ing] that there would be tax incentives to make [Z]EVs more affordable." Auto Dealers' argument overlooks that the EIB's finding on the affordability of ZEVs in New Mexico states that it did not rely on tax incentives: "The estimated cost savings for individual [Z]EV ownership do not include the impact of potential

tax rebates such as the current $7,500 federal rebate provided by the Inflation Reduction Act . . . and any future state legislatively funded [Z]EV incentives."

{48} As to whether New Mexico could build the charging stations and other technological infrastructure to support the ZEV mandate and whether New Mexicans could afford home chargers—two technologies that witnesses for Auto Dealers testified were not available in New Mexico and could not be implemented by the 2027 model year—the evidence showed that ZEV drivers with a short commute could recharge at home with a normal 120-volt outlet; that residents with longer commutes could purchase a level two charger for $138, requiring a 240-volt outlet (washing machine outlets), rather than spending the $4,000 Auto Dealers claimed would be required for home charging; and that charging stations were already available in Lordsburg, Socorro, Farmington, and Clovis, and an additional forty-two locations had been funded and were under construction with a completion date of 2024.

{49} In its final order,[7] the EIB stated that it gave little weight to Auto Dealers' assertion that local demand and New Mexico's lower annual income compared to California generally would not support the adoption of the ACC II ZEV mandate, finding that "a typical model year 2027 [ZEV] will pay back the added costs in under

---

[7]We quote the EIB's final order. Although the AQCB final order reflects reliance on the data and findings described above, it does not include the quoted language.

[five] years and deliver over $7,000 in savings for a car and $10,000 for a truck over the vehicle's life; while a typical model year 2035 [Z]EV will pay back smaller added costs in just over [one] year with lifetime savings over $13,000." The EIB reasoned that "the projected reduced cost of ownership for [ZEV]s of all types will provide significant economic benefits to New Mexico businesses and individual citizens." Further, the EIB's findings and conclusions expressly acknowledge Auto Dealers' testimony concerning what its members saw as potential economic harm to dealerships in the state from low demand for ZEVs, unaffordable prices, and lack of necessary infrastructure. However, the EIB noted that it did not find Auto Dealers' testimony based on the experience of their members in the past persuasive: "[M]any of the challenges [Auto Dealers] face are the result of a global shift to electrified transportation in general, and will not result specifically from the implementation of ACC II" and their concerns are mitigated by the regulation's delay in adopting the ACC II ZEV standards until model year 2027. Finally, the Boards determined that ACC II standards are "both technically practicable and economically reasonable in the methods [the regulations] employ[] to reduce air contaminants from the sources involved."

{50}     In reviewing the whole record, we are not persuaded that the Boards acted without substantial evidence in the record, that the conflicting evidence in the record renders the evidence that supports the Boards' decision not credible, or that the

Boards' decision is arbitrary or capricious. *See Albuquerque Bernalillo Cnty. Water Util. Auth.*, 2010-NMSC-013, ¶ 89; *Wilcox*, 2012-NMCA-106, ¶ 7.

{51}     The findings show that the Boards did not disregard Auto Dealers' contrary evidence; they simply weighed more heavily both the contrary technical evidence and the evidence concerning the benefits to public health and the economy from adopting ACC II's ZEV standards. We will not interfere with the weight the Boards decided to give Auto Dealers' concerns regarding technical practicability and economic reasonableness, where the Boards reasonably considered all of the facts and circumstances. *See* § 74-2-5(F)(3) (stating that each Board "shall give weight it deems appropriate to all facts and circumstances, including: . . . (3) technical practicability and economic reasonableness of reducing or eliminating air contaminants from the sources involved"). In short, we find the Boards' decision that California's ACC II ZEV standards for model years 2027 through 2032 is a "technically practicable and economically reasonable" choice for New Mexico is supported by substantial evidence, and is not arbitrary or capricious. We remind Auto Dealers that "[w]here there is room for two opinions, the [Boards'] action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached." *See Tenneco Oil Co. v. N.M. Water Quality Comm'n*, 1987-NMCA-153, ¶ 15, 107 N.M. 469, 760 P.2d 161 (alteration, internal quotation marks, and citation omitted), *superseded by statute on other grounds as stated in N.M.*

*Mining Ass'n v. N.M. Water Quality Control Comm'n*, 2007-NMCA-010, ¶ 19, 141 N.M. 41, 150 P.3d 991.

**CONCLUSION**

{52}    For the reasons stated above, we affirm.

{53}    **IT IS SO ORDERED.**


                                          _____

                                          **JANE B. YOHALEM, Judge**

**WE CONCUR:**

_____

**JENNIFER L. ATTREP, Judge**

_____

**GERALD E. BACA, Judge**